Fuld, J.
In 1931 Anna Knauth created an inter vivos trust for the benefit of her son Oliver. It was provided that he was to receive the entire net income from the trust for his life and that both principal and income were to be “ free and clear from the control of [his] debts, liabilities and engagements ’ ’. In 1938, when he was 26 years old, Oliver married Mary Pickett, and they had two daughters. In 1946 Mary left her husband, taking the children with her, and in February, 1947 she instituted a suit for divorce in Connecticut.
About six months later, while the divorce action was pending, husband and wife entered into a written contract. After reciting that they had separated and desired ‘1 to have their financial relationship so adjusted that the wife shall have an income of her own without being under the necessity of depending upon the husband for her support and the support of the children, who live with her ”, the agreement went on to state that the husband was making an “ irrevocable assignment ” to the wife of all of the income from the trust in excess of $100 a month, to be “in full of the husband’s duty to support her and the children so long as the said trust income is the whole of the income of the husband.”[1] A copy of the agreement was delivered to the trustees and they have been paying the income of the trust in accordance with its provisions.
*263 The Connecticut divorce action, in which Oliver had appeared, terminated in the Fall of 1948 with a decree in Mary’s favor. She was given custody of both daughters and was awarded alimony of $1 a month. Obviously, as found below, the amount was fixed at this nominal figure because the husband had already provided for the support of his wife and children by the assignment he had made of trust income.
The present proceeding was brought by the trustees for a settlement of their accounts and for other relief, including a determination as to the legal effect of the assignment of trust income to Mary. In his answer, the husband, contending that the assignment violated both the expressed intent of the creator of the trust and the laws of New York, requested a declaration that the agreement is void insofar as it seeks to assign trust income. The Referee, appointed by the court at Special Term to hear and determine the issues, rejected this contention and held the agreement valid. The Appellate Division, agreeing, affirmed the resulting order, with a modification not here pertinent, and the husband appeals to this court as of right.
In this State, the restrictions on the income beneficiary’s right to alienate his interest in the trust are purely statutory. (See Bramhall v. Ferris, 14 N. Y. 41, 44; Dyett v. Central Trust Co., 140 N. Y. 54, 65—66; see, also, Griswold, Spendthrift Trusts [2d ed.], § 67.) The applicable statute in the case before us, section 15 of the Personal Property Law, provides that “ The right of the beneficiary to enforce the performance of a trust to receive the income of personal property, and to apply it to the use of any person, can not be transferred by assignment or otherwise.” (See, also, Real Property Law, § 103.) Absolute though the prohibition is on its face, there is no doubt that it is subject to qualification. When read in connection with related statutory provisions (Real Property Law, § 98; Civ. Prae. Act, § 793), it is clear that the rule prohibiting the transfer of income from a spendthrift trust is designed to protect the beneficiary against his own improvidence so that such income may be preserved not only for his support but for that of his family as well. (See, e.g., Wetmore v. Wetmore, 149 N. Y. 520; Matter of Sand v. Beach, 270 N. Y. 281, 285-286.) And, it follows from this, an assignment of trust income for the support of wife and children, *264 far from violating the policy or the spirit of the rule, actually tends to effect its purpose. (See Matter of Littauer, 285 App. Div. 95, 98, motion for leave to appeal den. 308 N. Y. 1052; Matter of Yard, 116 Misc. 19; Matter of Bellamore, 27 Misc 2d 118; see, also, Griswold, Spendthrift Trusts [2d ed.], § 338; Restatement, Trusts, 2d, § 157, comment g.)
In point of fact, the courts have gone so far as to uphold the wife’s right to an involuntary transfer of future income for her support from the husband’s spendthrift trust. Thus, where she has obtained a judgment of divorce directing the payment of alimony, it has been consistently held that the trustees of the trust may be ordered to pay such alimony in order to satisfy the judgment. (See, e.g., Wetmore v. Wetmore, 149 N. Y. 520, 529, supra; Wetmore v. Wetmore, 162 N. Y. 503, 510; Moore v. Moore, 143 App. Div. 428, 434, affd. 208 N. Y. 97; Thompson v. Thompson, 52 Hun 456, 458; see, also, Griswold, Spendthrift Trusts [2d ed.], § 338.) The settlor “ in constituting a trust for the benefit of his son ”, this court declared in Wetmore v. Wetmore (162 N. Y. 503, 510, supra), “must have contemplated that it should also be for the benefit of his wife, should he marry, and his children, should any result from the marriage. This, we thought, was a reasonable and just view of the question presented.” If, therefore, a direction in a divorce decree requires the payment of alimony out of the husband’s interest in trust income, it stands to reason that payment of the amount voluntarily allotted to the wife for her support should likewise be required. The only difference between the two cases, as Surrogate Foley observed some 40 years ago, is that in the latter ‘ ‘ the husband consents to the allowance, thereby recognizing the duty to provide and the reasonableness of the amount fixed”. (Matter of Yard, 116 Misc. 19, 22, supra.)
Cases may arise in which an assignment of trust income may have left the husband without sufficient means for his own support but the present is not one of them, and we need not now concern ourselves with the problems they may present. Here, on the facts adduced, the courts below were privileged to conclude, as they did, not only that the assignment agreement was fair and reasonable when made in 1947, not only that it continued so down through the years since its execution, but that *265 Oliver, “ better off financially” than Mary, has continued to have sufficient means for his maintenance. If, however, Oliver’s circumstances do change in the future and he requires for his support or that of his then dependents more of the income from the trust than he retained, he is free to apply to the court for such reallocation of the income as is deemed necessary.
The order should be modified in accordance with this opinion and, as so modified, affirmed, with costs to the guardian ad litem for infant respondents.

. A short time after the execution of this agreement, Oliver’s father, apparently to make up to him that portion of the income from his mother’s trust which he had assigned to Mary, created a second trust for his benefit.