*350
 
 Chief Judge Breitel.
 

 This appeal involves two conflicting claims to a fund held by the Retirement Board of the New York City Teachers’ Retirement System. The fund consists of benefits payable on death of the late Daniel P. Caravaggio, a former member of the Retirement System, who had died shortly after retirement.
 

 Plaintiff Rose Caravaggio was decedent’s first wife. She claims the fund as an allegedly irrevocably designated beneficiary under a separation agreement made with decedent prior to their divorce. Interpleaded defendant Helen Caravaggio was decedent’s second wife, who lived with him until his death. She claims the amount of the benefits due as the last beneficiary designated by her husband. Defendant and interpleading plaintiff Retirement Board holds the fund as a disinterested stakeholder.
 

 Supreme Court gave summary judgment to the first wife, Rose, and directed payment of the fund to her. The Appellate Division affirmed, without opinion.
 

 The issue is whether a member of the New York City Teachers’ Retirement System may effectively agree, in a separation agreement, to designate irrevocably a beneficiary of benefits payable on death.
 

 There should be a reversal. A member of the Teachers’ Retirement System may not effectively agree, in a separation agreement, or otherwise, to designate irrevocably a beneficiary of benefits payable on death. Such an agreement, while perhaps a contractual promise enforceable against the general assets of the deceased member’s estate, will not operate to defeat the claim of a later validly-designated beneficiary to the specific fund.
 

 
 *351
 
 Decedent, Daniel P. Caravaggio, was for many years a teacher in the New York City school system, and was a contributor-member of the Teachers’ Retirement System. Decedent and Rose were married on September 5, 1931. On January 9, 1957, decedent named his wife Rose as beneficiary of all benefits payable by the Retirement System in the event of his death prior to retirement. Also, on the same day, decedent made a selection of retirement benefits under Option I of section B20-46.0 of the New York City Administrative Code, and designated Rose as beneficiary of all benefits under this option payable upon his death after retirement.
 

 After some 38 years of marriage, the couple separated, and entered into a separation agreement dated March 28, 1969. In the separation agreement, decedent purported to make irrevocable the 1957 designation of Rose as beneficiary of benefits payable in the event of his death prior to retirement. Decedent also agreed that, upon his retirement, he would designate the "wife” as beneficiary of all benefits payable upon his death after retirement. The obvious purpose of these provisions in the agreement was to create a vested right in Rose to receive the benefits and to make irrevocable the 1957 designation of beneficiary for Option I benefits. The agreement provided that the designation would be binding upon decedent whether or not the parties were divorced, or either remarried. A copy of the agreement was delivered to the Retirement Board and receipt was acknowledged by it, but the board noted that it did not bear "any responsibility for the fulfillment of any part of the agreement.”
 

 On or about April 19, 1969, Rose obtained a judgment of divorce against her husband in Juarez, Mexico. The separation agreement was incorporated into the Mexican judgment. Rose remarried in June, 1969, and decedent too was remarried, on July 10, 1969, to his surviving widow, Helen.
 

 On April 2, 1971, decedent filed with the Retirement Board a new designation of beneficiary naming second wife Helen as the primary beneficiary of all benefits payable in the event of his death either before or after retirement and named his children from his first marriage as contingent beneficiaries. The designation stated that it superseded all previously-filed designations of beneficiary. On March 23, 1972, decedent filed a new selection of benefits under Option II of section B20-46.0 of the Administrative Code, and designated Helen as the sole beneficiary to receive the benefits upon his retirement under
 
 *352
 
 Option II. This designation was unchanged at the time of decedent’s death.
 

 Together with the new selection of benefits made on March 23, 1972, decedent filed an application for retirement, to be effective May 1, 1972. Three days after his retirement, on May 3, 1972, decedent died. In accordance with the "death gamble” provisions of the statute, paragraph b of subdivision 2 and subdivision 4 of section B20-41.0 of the Administrative Code, decedent was deemed to have elected to retire under Option I. Payment of the benefits has been suspended pending the outcome of this litigation.
 

 The pensioning of civil employees is designed primarily to attain suitable standards of service at a relatively low wage cost by insuring against privation for the employee and his family when his years of productivity have ended. Indeed, the benefits secured by membership in a public retirement system have been accorded constitutional protection in this State in recognition of their importance to the success of the civil service system (NY Const, art V, § 7; see
 
 Matter of Ayman v Teachers’ Retirement Bd.,
 
 9 NY2d 119, 125;
 
 Kleinfeldt v New York City Employees’ Retirement System,
 
 36 NY2d 95).
 

 The public policy underlying the pensioning of civil employees is reflected in the statutory scheme of the Teachers’ Retirement System, as well as those of the other major State and city retirement systems. A member of the Teachers’ Retirement System has a statutory right to change his designation of beneficiary at any time, either before or after retirement, by the filing of a new designation or designations prior to his death (Administrative Code of City of New York, § B20-46.0, subd a; see
 
 Moyer v Dunseith,
 
 180 Misc 1004, 1006, affd 266 App Div 1008; cf., e.g., Retirement and Social Security Law, § 51, subd d; § 60, subd c; § 90, subd c, par 3, cl [a];
 
 Lade v Levitt,
 
 33 AD2d 956, 957, app dsmd 27 NY2d 532;
 
 Gartman v New York State Employees Retirement System,
 
 152 NYS2d 849, 852 [NY State Employees’ Retirement System]; Retirement and Social Security Law, § 351, subd d; § 360, subd c; § 390, subd c, par 3, cl [a] [NY State Policemen’s and Firemen’s Retirement System]). Such a designation of beneficiary has always been considered revocable
 
 (Torok v Teachers’ Retirement Bd.,
 
 NYLJ, Nov. 15, 1939, p 1634, col 6, affd 262 App Div 999, affd 288 NY 636, 637; cf.
 
 Fleming v New York City Employees Retirement System,
 
 NYLJ, Dec. 19, 1962, p 9, col 7;
 
 Flanagan v O’Dwyer,
 
 197 Misc 5, 9;
 
 Matter of McCoy v
 
 
 *353
 

 City of New York,
 
 NYLJ, May 15, 1941, p 2182, col 7 [NY City Employees’ Retirement System]). A member cannot in any manner be prohibited during his lifetime from designating anyone as beneficiary (see
 
 Moyer v Dunseith,
 
 180 Misc 1004, 1006-1007, afid 266 App Div 1008,
 
 supra).
 

 The rights of a member to receive benefits under the Teachers’ Retirement System are exempt from State and municipal tax, levy and sale, garnishment, attachment, and any other process whatsoever, and are unassignable, except as specifically otherwise provided (Administrative Code, § B20-48.0; see
 
 Lapolla v Retirement Bd.,
 
 140 NYS2d 449, 452;
 
 Hecht v Whalen,
 
 174 Misc 146, 147;
 
 Matter of Distefano,
 
 167 Misc 678, 679, affd 255 App Div 957; cf. Retirement and Social Security Law, § 110;
 
 Crowley v New York State Employees’ Retirement System,
 
 58 Misc 2d 788, 789-790; 1940 Opns. Atty. Gen. 356 [NY State Employees’ Retirement System]; Retirement and Social Security Law, § 410, subd 3 [NY State Policemen’s and Firemen’s Retirement System]; Education Law, § 524 [NY State Teachers’ Retirement System]; Administrative Code, §§ B3-50.0 [NY City Employees’ Retirement System], B18-52.0 [NY City Policemen’s Retirement System], B19-7.94 [NY City Firemen’s Retirement System]; see, generally, 22 NY Jur, Exemptions, § 31; 44 NY Jur, Pensions and Retirement Systems, §§ 43, 132, 188). The exemption and antiassignment provisions evince a legislative intent to protect the member and his family from the results of his own improvidence or misfortune, and to relieve the retirement systems from the vast amount of administrative work attendant on the processing of attachments, assignments, and the like (see
 
 Crowley v New York State Employees’ Retirement System,
 
 58 Misc 2d 788, 790,
 
 supra; Lapolla v Retirement Bd,
 
 140 NYS2d 449, 452,
 
 supra; Hecht v Whalen,
 
 174 Misc 146, 148,
 
 supra; Matter of Distefano,
 
 167 Misc 678, 679-680, affd 255 App Div 957,
 
 supra).
 

 Given the historical purposes of a public retirement system, the strong provision against assignment of rights during the member’s lifetime, and the ambulatory nature of the power to designate beneficiaries after death, it would defeat the policy underlying the system to permit a bargaining away of benefits payable on death. The purpose of the system to protect the surviving family or other objects of the member’s bounty after death would be defeated by such a bargaining away, just as much as by allowing assignment of rights during the mem
 
 *354
 
 ber’s lifetime. In this respect the retirement system plan is not unlike a spendthrift trust, except that it is stronger in purpose by virtue of statute and Constitution.
 

 Nor should the policy be blinked because of obvious sympathy for a first wife who may have been more worthy in the eyes of others. For if the right to designate a beneficiary can be bargained away for a worthy member of the family, it may be bargained away for an unworthy person or a creditor or exacting lender who will expect much because his security may be deferred until the death of his debtor.
 

 Perhaps most important, the ambulatory purpose of the power to designate a beneficiary and to change that designation at any time is to make sure that with a change of circumstances the designation may be adapted to the change. For a variety of reasons, for example, it may be wise to change the beneficiary from a wife in comfortable circumstances to surviving children who are handicapped or in need.
 

 On any view of the matter it would not make sense to read the antiassignment provision independently and not relate it to the provision permitting untrammeled change of beneficiary. Obviously, to determine the effect of the change of beneficiary provision the two should be read together, both being present in an integrated statute and enacted simultaneously (see
 
 Gaden v Gaden,
 
 29 NY2d 80, 86; McKinney’s Cons. Laws of NY, Book 1, Statutes, § 97).
 

 Hence, the right to change designations is absolute and indefeasible, and may not be bargained away, even in a separation agreement, or otherwise, as it would be tantamount to an assignment, in whole or in part, of the right to make provisions for the unknown future when it should come to pass, and thus would violate the public policy underlying the system. A fortiori, an agreement purporting to designate irrevocably a beneficiary should not be deemed a waiver of the right to change beneficiaries. In that context it becomes a contradiction of the right to change designations. No effect will be given to a waiver which violates public policy (see
 
 Estro Chem. Co. v Falk,
 
 303 NY 83, 87;
 
 Rosen v New York City Teachers’ Retirement Bd.,
 
 282 App Div 216, 218, affd 306 NY 625).
 

 Support for this policy view may be found in analogous Federal law. With respect to both National Service Life Insurance policies and United States Government Life Insurance policies, similar change of beneficiary and antiassignment
 
 *355
 
 provisions are to be found (see US Code, tit 38, § 717, subd [a]; §§ 749, 3101). In
 
 Kimball v United States
 
 (304 F2d 864, affg 197 F Supp 124), the court was presented with a situation virtually identical to that in the instant case. Affirming a judgment for the second wife, the court stated that, notwithstanding a purportedly irrevocable designation of the first wife as beneficiary contained in a separation agreement, under the statutes "the insured had at all times the right to change the beneficiary of the policy; and payments of benefits due thereunder were not assignable” (304 F2d, at p 865). The court adopted the reasoning of the lower court, which stated in part as follows:
 

 "All the legal authority is to the effect that the insured is at all times free to change the beneficiary of his Government life insurance and that, contrary to ordinary commercial life insurance, no person can be named beneficiary irrevocably.
 

 * * *
 

 "If any additional support for the judgment reached should be thought necessary, the statute creating the types of insurance involved here provides that it shall not be assignable [citing statute] and certainly the purported irrevocable transfer arising out of the divorce proceedings was in effect and tantamount to an assignment and forbidden by the Act above cited.” (197 F Supp, at pp 124, 125.) (See, also, to the same effect,
 
 Kauffman v Kauffman,
 
 93 Cal App 2d 808, 814;
 
 Harris v Harris,
 
 94 Idaho 358, 362;
 
 Williams v Williams,
 
 255 NC 315, 320;
 
 Fleming v Smith,
 
 69 Wn 2d 277, 284; see, generally, Change of Beneficiary, Ann., 2 ALR2d 492, § 3.)
 

 The issue presented on this appeal appears to have been treated by the courts in this State but twice before. In
 
 Lade v Levitt
 
 (33 AD2d 956, app dsmd 27 NY2d 532,
 
 supra),
 
 a situation factually, although not procedurally, similar to the instant case was considered. In
 
 Lade,
 
 the rival claimants to the deceased member’s benefits were his divorced first wife, claiming under a purportedly irrevocable designation of her as beneficiary contained in a 1941 separation agreement (which apparently had not been filed with the State Retirement System), and his second wife, claiming as the last nominated beneficiary. After a determination by the Comptroller that the second wife was entitled to the benefits as the last designated beneficiary, the decedent’s first wife sought a declaration of her rights as against the Comptroller and the second wife. The second wife instituted an article 78 (CPLR) proceeding to
 
 *356
 
 compel the Comptroller to pay the benefits over to her. Special Term dismissed the declaratory judgment action against the Comptroller, holding that the Comptroller’s determination was reviewable only in an article 78 proceeding, and ordered payment of the benefits over to the second wife
 
 (Lade v Levitt,
 
 60 Misc 2d 49, 51,
 
 supra).
 
 The Appellate Division modified. Although noting that, under existing law, the husband had a right to change the beneficiary and that the Comptroller was bound to honor it, the court directed payment of the funds into court, pursuant to CPLR 2701 (subd 2), pending the outcome of the declaratory judgment action between the first and second wives. Mr. Justice Staley dissented in part, on the ground that the last named beneficiary’s right to payment of the funds was absolute and thus there was no authority for payment into court (33 AD2d, at p 958). The first wife ultimately prevailed on "equitable” grounds in the declaratory judgment action against the second wife
 
 (Lade v Parker,
 
 65 Misc 2d 369, 373).
 

 Lapolla v Retirement Bd.
 
 (140 NYS2d 449,
 
 supra)
 
 is more closely akin to the instant situation. In
 
 Lapolla,
 
 the rival claimants to the deceased member’s death benefits were his first and second wives. The decedent had designated the first wife as beneficiary. Thereafter, the couple were divorced, and the judgment obligated the member to make irrevocable the designation of the first wife. The judgment was never filed with the Teachers’ Retirement Board.
 

 The member subsequently remarried, and executed a new designation, in which he designated his second wife, his son and his former wife as beneficiaries. Special Term awarded the benefits to the first wife, holding that the purported irrevocable designation of her as beneficiary was not an impermissible assignment of the member’s rights.
 

 The cases are of course not binding authority on this court and their rationales are not persuasive. They represent a simplistic dichotomy between nonassignment clauses and the right to change beneficiaries, borrowed, perhaps, from private life insurance where there are no statutorily-expressed policies designed to protect the purchaser of life insurance against his own improvidence. Indeed, it is optional in the purchase of life insurance to provide for a beneficiary who may not be changed without consent, and private life insurance is generally freely assignable
 
 (St. John v American Mut. Life Ins. Co., 13
 
 NY 31, 39).
 

 
 *357
 
 Most important, perhaps, is that in the
 
 Lapolla
 
 case
 
 (supra)
 
 the direction to designate the first wife irrevocably as a beneficiary had been included in a judgment of divorce, and the reviewing court was determining whether that judgment would be given effect, despite the failure to file the judgment with the Retirement System.
 

 Of course, despite what has been said, the first wife may have rights based on contract against the estate of the decedent; but what is dealt with here are not the general assets of his estate but a specifically-protected fund governed by statute heavy with public policy. Because of the strong policy considerations noted the right to change one’s beneficiary of benefits payable after death is ambulatory, like the right to make a will. A will is an instrument revocable at the pleasure of the testator (EPTL 1-2.18, subd [a]). A testator who contracts to bequeath property by his will is not prevented by that fact from validly changing his will to bequeath the property to another (see
 
 Morgan v Sanborn,
 
 225 NY 454, 461). The testator’s estate, however, may be bound by the antecedent obligation (see
 
 Rastetter v Hoenninger,
 
 214 NY 66, 71;
 
 Schley v Donlin,
 
 131 Misc 208, 211). Like a contract to bequeath, a promise to make an irrevocable designation of beneficiary contained in a separation agreement may, perhaps, form the basis of a cause of action against the promisor’s estate for breach of that promise. It will not, however, operate to defeat the claim to the specific fund of a later validly-designated beneficiary.
 

 The policy of protecting an individual against the results of his own improvidence or misfortune is a commonplace in the law. Spendthrift trusts, statutory limitations on and exemptions from execution, and the like, serve the common good by guarding against the impoverishment of those whose improvidence or misfortune might otherwise result in a burden upon society as a whole (see, e.g., EPTL 7-1.5, subd [a];
 
 Matter of Knauth,
 
 12 NY2d 259, 263; CPLR 5205, 5206;
 
 Kneettle
 
 v
 
 Newcomb,
 
 22 NY 249, 252). In the case of many civil employees, a pension and death benefits may be the sole source of support for the employee and his family in the years after public service has ended, and after the civil employee has died. To permit a civil employee to bargain away his right to change his beneficiary as a concession exacted in a moment of financial disadvantage or other transient exigency, is tanta
 
 *358
 
 mount to permitting an assignment of the right to receive his death benefits. This is impermissible.
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, and summary judgment granted to appellant, Helen Caravaggio.
 

 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order reversed, etc.