Alexander Berman, J.
In this action, plaintiffs, three adult children of the deceased insured, Carl C. Lengel, by his first wife, seek to recover the proceeds of a life insurance policy issued to him. Defendants are the Equitable Life Assurance Society of the United States and Roberta L. Lengel,. the insured’s widow, his last-named beneficiary.
Plaintiffs allege that defendant Equitable paid the proceeds of the policy to the codefendant, Roberta L. Lengel, decedent’s second wife, having knowledge of the provisions of a separation agreement made between the deceased and his first wife. This agreement dated March 9, 1956, provided that in the event of remarriage of decedent’s former wife, plaintiffs would be named and remain beneficiaries of the policy. Equitable denies having any knowledge of the contents of the separation agreement at the time it paid the proceeds to the codefendant. The text of the pertinent paragraphs of the separation agreement follows:
"7. The Husband’s life is presently insured under certain group policies taken out by the Husband’s employer, The New *462 York Times Company, and issued by the Equitable Life Assurance Society under Certificate Number 0479-1586 and under individual certificate number 0479-974. The Husband represents and warrants to the Wife, that the policies are presently free, clear and unencumbered; that all dues, premiums and assessments due thereon have been duly paid; that the policies are now in full force and effect and that he has not heretofore borrowed against the same.
"A. The Husband further represents and warrants that the Wife is currently the primary beneficiary of the policies.
"B. The Husband shall not change the beneficiary on the policies, except that if the Wife re-marries, he may remove her as primary beneficiary. If he elects to do so, he shall be obligated to name the children as beneficiaries in equal shares.
"C. The Husband shall not borrow against the policies, shall not pledge, hypothecate or otherwise encumber it, shall pay all dues, premiums and assessments on it.
"D. The Husband shall give notice to the said Equitable Life Assurance Society of the terms of this agreement insofar as they pertain to the above policies.”
Some time after the execution of the separation agreement, the first named beneficiary remarried and in accordance with the terms of said agreement, decedent duly named his three children, the plaintiffs, as beneficiaries on September 26, 1958. This designation remained in effect until January 13, 1971, when decedent named the defendant, his second wife, Roberta, whom he had married in 1957, as his beneficiary.
The insured died on February 8, 1972, and three days later, on February 11, 1972, plaintiff, Hazel Johnson, wrote to Equitable stating in substance that she understood that "the policy was part of the divorce settlement” between her parents, the deceased and his first wife, and that she understood that the proceeds from the same were to be paid to his children. The company, in reply, stated that the "insured had the right to change his beneficiary at any time” and that someone other than the plaintiffs had made a claim for the proceeds thereof. It further advised that it would pay out the proceeds of the policy "unless duly restrained by law” from doing so. The same plaintiff claims also to have discussed the claim of the three children to the policy in a conversation with the codefendant, Roberta Lengel, several days after the insured’s death. This is denied by defendant Lengel. At any *463 rate, on June 13, 1972, about four months after the date of the letter to Equitable, the proceeds of the policy in the amount of $9,623.37 were paid to the defendant, Roberta Lengel.
Plaintiffs testified that the separation agreement was not in their possession at the date of the aforesaid letter, and that it was not found until at or about the time of the payment by Equitable to Roberta Lengel. Defendant, Equitable, did not have and could not have had knowledge of its existence. It had an obligation to pay the last named beneficiary unless and until actual notice of an adverse claim was delivered to it. Had such a claim been filed, it would then have had sufficient grounds to withhold payment to Roberta Lengel, at least until the conflicting claims were resolved. Other than the letter of February 8, 1972, no claim was submitted to Equitable, and in the absence of same, Equitable had no alternative but to make payment to the decedent’s widow designated in the policy. The letter referred to cannot be considered more than an inquiry. It definitely was not a formal claim, and accordingly, the case against Equitable must fall.
We come now to the plaintiffs’ case against defendant, Roberta L. Lengel, on the theory of unjust enrichment. As a necessary predicate for plaintiffs’ success, there must be a finding that the terms of the separation agreement (supra) created for them vested rights, thus precluding any effective change of beneficiary from them to the defendant, Roberta Lengel.
Defendant Lengel contends that the separation agreement was not binding upon her and did not create vested rights in plaintiffs. She relies on the case of Caravaggio v Retirement Bd. of Teachers’ Retirement System of City of N. Y. (36 NY2d 348, 354), decided by the Court of Appeals on March 26, 1975, in which that court said: "the right to change designations is absolute and indefeasible, and may not be bargained away, even in a separation agreement, or otherwise, as it would be tantamount to an assignment, in whole or in part, of the right to make provisions for the unknown future when it should come to pass, and thus would violate the public policy underlying the system. A fortiori, an agreement purporting to designate irrevocably a beneficiary should not be deemed a waiver of the right to change beneficiaries. In that context it becomes a contradiction of the right to change designations. No effect will be given to a waiver which violates public policy (see Estro Chem. Co. v Falk, 303 NY 83, 87; Rosen v New *464 York City Teachers’ Retirement Bd., 282 App Div 216, 218, affd 306 NY 625).”
However, the Caravaggio case, and others of similar import cited by defendant Lengel, including Lapolla v Retirement Bd. of Teachers’ Retirement System of City of NY, (140 NYS2d 449); Lefrak v Lefrak (NYLJ, Jan 20, 1976, p 11, col 3 [McCaffrey, J]), as well as Wagner v Wagner (NYLJ, Feb 10, 1976, p 6, col 2 [Postel, J.]), all deal with either public employees’ retirement funds or Government insurance, and involve a strong public policy prohibiting the bargaining away of the right to change a beneficiary. This public policy expounded in Caravaggio (supra) is not applicable, however, to private insurance policies, for as to them, a contrary position has been expressed by the courts which have invariably upheld the right of an insured to enter into an agreement in which he irrevocably designates a beneficiary. This rule is set forth in the landmark case of Stronge v Supreme Lodge, Knights of Pythias (189 NY 346, 351), in which that court said: "Thus assuming that a contract was made by a member for a valuable consideration to take out a certificate for the benefit of appellant, it seems to us very clear that after the certificate has been taken out and the consideration fully furnished by the beneficiary, the member will not be allowed to destroy the rights of his creditor by a new certificate naming a new beneficiary.” This rule was followed by the Appellate Division in the case of Locomotive Engs. Mut. Life & Acc Ins. Assn. v Locke (251 App Div 146, 149), in which the court said: "Applying this rule to the record before us, we conclude that the separation agreement of 1927 was sufficient in law to vest in the defendant Locke the right to the insurance represented by the original certificate. Thus acquired, her vested interest was not lost in 1933 when, by reason of the amendment of plaintiff’s constitution and by-laws, a new certificate was issued in which the assured chose to designate a different beneficiary.”
More recently, the Appellate Division, First Department, following this same concept, held: "The designations of plaintiffs, sons of the insured — as equal beneficiaries in lieu of their support — were made pursuant to a separation agreement entered into between their parents, the deceased insured and his first wife. At the time the beneficiaries were minors and the insured agreed to keep the insurance in force so long as he was financially able. Thus there resulted an agreement sup *465 ported by a valid consideration under which the plaintiffs acquired an equitable interest. This precluded any change of rights of the beneñeiaries without their consent so long as the policy was extant.” (Ehrlich v Cohn, 1 AD2d 1004, affd 2 NY2d 886; to the same effect, see Boffa v Bove 121 NYS2d 709; and Salinas v Salinas, 187 Misc 509, affd 271 App Div 917, mot for lv to app den 296 NY 1061.)
Under the circumstances, it is clear that there was an irrevocable designation of these plaintiffs as beneficiaries of the life insurance policy by the terms of the separation agreement. Any other conclusion would ignore the very clear intention expressed by the parties to the agreement that if the wife remarried that decedent then had the obligation to name the children as irrevocable beneficiaries. This unquestionably created a vested right in these plaintiffs to the proceeds of the policy.
There still remains the question as to whether, by reason of Roberta Lengel’s acquisition of the proceeds of the insurance policy, she thereby became unjustly enriched to the detriment of plaintiffs. In this connection, she argues that she was innocent of any wrongdoing and that she cannot be held to have been unjustly enriched in the absence of some deceit, fraud or wrongful act on her part.
The theory of unjust enrichment is the existence of an obligation created by law because someone has obtained something of value "under such circumstances that in equity and good conscience he ought not to retain it.” (Miller v Schloss, 218 NY 400, 407.) "Unjust enrichment is not necessarily 'unlawful’ or 'wrongful’ enrichment. Restitution does not presuppose a wrong by the person who receives the money, property, or benefit.” (50 NY Jur, § 5, p 157.) No case has been reported in New York, as far as this court has been able to determine, involving a fact situation in which the proceeds of a policy had already been paid to someone other than the lawfully entitled party. The cases cited above with reference to vested rights deal with situations in which the policy proceeds had not yet been paid. However, it naturally follows, that if these plaintiffs had a vested interest in the policy they should be entitled to recover the proceeds from one who received same in violation of their rights. An almost identical situation was dealt with by the Supreme Court of Wisconsin (the highest Appellate Court of that State), in the case of Richards v Richards, decided April 20, 1973 (58 Wis 290). In *466 the latter case, a written stipulation had been entered into at the time of the divorce which required the deceased to name the children of the parties as beneficiaries of a life policy. The divorce decree directed that the terms of the stipulation be complied with. Thereafter, decedent, in violation of the stipulation, changed the beneficiary from his children to his second wife. This change was made without any knowledge on the part of the second wife of the existence of the policy. As in the case at bar, the proceeds of the policy were collected by the second wife, the widow. The court held (pp 293-294, 298-299):
"Nevertheless, we conclude that, under the circumstances of this case, the children of the deceased were equitably entitled to the proceeds of the insurance policy and that a constructive trust should be imposed on the proceeds for their beneñt * * *
"Accordingly, we conclude that Jack Richards’ wrongful conduct, in violation of the divorce decree, furnishes a proper foundation for the impressing of a constructive trust upon the insurance proceeds which may be followed and recovered from Patricia Richards, who was not a bona fide purchaser. We conclude that the defendant is liable to the plaintiffs in the sum of $11,000, the proceeds of the insurance policy which she received as constructive trustee for the beneñt of the children of Jack Richards’ ñrst marriage.” (Emphasis supplied.) The logic expressed in the Richards decision (supra) applies here, and leads to the inexorable conclusion that the three plaintiffs are entitled to recover the proceeds of the insurance policy from the defendant, Roberta L. Lengel. The fact that she committed no fraud, was not at fault, or even had no prior knowledge, may not defeat the vested rights of these plaintiffs.
Settle judgment on notice in accordance with this decision: (a) dismissing the complaint as against the defendant, the Equitable Life Assurance Society of the United States; and (b) granting judgment in favor of the plaintiffs against the defendant Lengel for the sum of $9,623.37, all without costs.