OPINION OF THE COURT
 

 Titone, J.
 

 In
 
 Caravaggio v Retirement Bd. of Teachers’ Retirement Sys.
 
 (36 NY2d 348), we held that an "anti-assignment” statute prevented a member of the Teachers’ Retirement System (TRS) from designating a former spouse as "irrevocable beneficiary” of pension benefits in a separation agreement, and that a subsequently executed beneficiary form filed with the Retirement System governed distribution of those funds. The enactment of the Equitable Distribution Law in the interim, however, prompts us to revisit the issue and to reach a different conclusion today. For the following reasons, we now hold that a separation agreement expressly distributing pension benefits as marital property pursuant to the Equitable Distribution Law is enforceable and exempt from application of the statutory anti-assignment provision governing the TRS pension funds.
 

 I.
 

 This dispute concerns the competing claims asserted by the first and second wives of decedent Daniel Kaplan to approximately $800,000 in pension death benefits accrued while he was a member of the Teachers’ Retirement System. Plaintiff Sondra Kaplan, decedent’s first wife, contends that she is entitled to the death benefits under a separation agreement, which was incorporated into their 1985 judgment of divorce. The parties’ agreement states that it "constitute^] an agreement pursuant to Domestic Relations Law § 236 (B) (3) * * * in lieu of each of their respective rights” to assert claims for maintenance or distributive awards of marital property. Regarding the pension, the stipulation expressly acknowledges that "[p]ursuant to Domestic Relations Law § 236 (B) * * * [plaintiff] has an equitable interest in” decedent’s pension, and further designates her "100% irrevocable beneficiary” of decedent’s pension death benefits. Defendant Nessa Kaplan, decedent’s second wife, seeks to divide the funds by enforcing two
 
 *304
 
 pension beneficiary forms validly executed by decedent and filed with TRS in 1988 and again in 1989, naming her 58.5% beneficiary and plaintiff as 41.5% beneficiary of the death benefits.
 

 In January 1991, plaintiff commenced this action against decedent’s estate and TRS seeking in her first cause of action a declaration that defendant Nessa Kaplan had no right, title or interest in decedent’s pension benefits and that plaintiff was entitled to 100% of the benefits under the terms of the separation agreement. In her second cause of action, plaintiff asserted a breach of contract claim against decedent’s estate for the full value of the pension benefits due. Plaintiff moved for a temporary restraining order and a preliminary injunction seeking to enjoin defendant TRS from paying any pension benefits to defendant. Supreme Court granted TRS’s motion for summary judgment dismissing the complaint and vacated a temporary restraining order which had earlier been granted, holding,
 
 inter alla,
 
 that under this Court’s decision in
 
 Caravaggio (supra)
 
 "an agreement to designate irrevocably a beneficiary of benefits payable on death by a member of the Teachers’ Retirement System is not effective and cannot be enforceable against the Retirement System when the member subsequently designates another beneficiary for his benefits.”
 

 The Appellate Division reversed on the law, reinstated the complaint, and granted plaintiff’s motion for summary judgment on the first cause of action declaring that plaintiff is entitled to 100% of the death benefits payable by TRS. In so doing, the Court recognized an exception to
 
 Caravaggio’s
 
 strict application of the anti-assignment statute for a "distribution of marital property made pursuant to the Equitable Distribution Law”
 
 (Kaplan v Kaplan,
 
 185 AD2d 179, 180). We granted leave to defendants Nessa Kaplan and TRS and now affirm.
 

 II.
 

 At the core of this dispute is defendants’ contention that the assignment of decedent’s death benefits to plaintiff under the separation agreement cannot be enforced because it contravenes Administrative Code of the City of New York § 13-561, which provides that public retirement fund pension benefits available to members of the Teachers’ Retirement System are "exempt from levy and sale, garnishment, attachment or any other process whatsoever, and shall be unassignable.” The purpose of this type of "anti-assignment” provision is to
 
 *305
 
 "protect public employee pensions against improvidence and misfortune” that might enable creditors or assignees to reach those funds
 
 (McDermott v McDermott,
 
 119 AD2d 370, 377,
 
 appeal dismissed
 
 69 NY2d 1028, citing
 
 Caravaggio, supra,
 
 at 353). This stated purpose is achieved "when the fund is preserved for the use of the pensioner and those legally dependent upon him [or her] for support and maintenance”
 
 (Zwingmann v Zwingmann,
 
 150 App Div 358, 360).
 

 Prior to the enactment of the Equitable Distribution Law, the anti-assignment statute governing benefits accruing to members of the Teachers’ Retirement System was strictly applied to bar equally the claims of a spouse or a creditor to the funds under an assignment or agreement with the pensioner
 
 (Caravaggio, supra,
 
 at 354). Thus, in
 
 Caravaggio,
 
 we held that a separation agreement purporting to irrevocably assign pension benefits to a former spouse was invalid and could "not operate to defeat the claim of a later validly-designated beneficiary to the specific fund” (36 NY2d, at 350). That determination was predicated primarily on the member’s absolute statutory right to change the designated beneficiary at any time
 
 (see,
 
 Administrative Code former § B20-46.0 [a]) and the underlying legislative intent of the anti-assignment provision to preserve the funds for the future support of the member and his or her dependents (36 NY2d, at 353). The Court justified its strict application of the rule to bar even a former spouse’s claim to the funds by likening the anti-assignment policy to a "spendthrift trust” in that it was designed to prevent "a civil employee [from] bargaining] away his right to change his beneficiary as a concession exacted in a moment of financial disadvantage or other transient exigency”
 
 (id.,
 
 at 357-358).
 

 Equating the rights of the spouse and dependents with those of any other creditor for purposes of applying the anti-assignment rule is no longer justified, however
 
 (see, McDermott,
 
 119 AD2d, at 377,
 
 supra; see also, Matter of Wanamaker v Wanamaker,
 
 93 Misc 2d 784). The revolutionary enactment of the Equitable Distribution Law in 1980
 
 (see,
 
 Domestic Relations Law § 236 [B]) recognized that marriage is an "economic partnership” that each spouse has individually contributed to during the marriage
 
 (O’Brien v O’Brien,
 
 66 NY2d 576, 583;
 
 see also, McDermott, supra,
 
 at 378-380). Accordingly, a former spouse is now understood to have acquired an independent ownership interest in any "marital property” acquired during
 
 *306
 
 the marriage and. prior to separation or divorce (Domestic Relations Law § 236 [B] [1] [c]).
 

 Since the enactment of the Equitable Distribution Law, this Court has held that pension benefits are marital property to the extent that the spouses accrued an interest in those benefits during the marriage, and thus are properly the subject of court-ordered equitable distribution awards
 
 (Tanchick v Tanchick,
 
 82 NY2d 202, 207;
 
 Majauskas v Majauskas,
 
 61 NY2d 481). Indeed, in this case, the separation agreement acknowledges that plaintiff has an equitable interest in decedent’s pension funds under Domestic Relations Law § 236 (B).
 

 However, the pension benefits in this case are subject to an anti-assignment rule prohibiting their alienation by an act of the Retirement System member. Nonetheless, we conclude that the policies underlying this and other anti-assignment provisions would not be offended by subjecting pension benefits such as those accrued by the decedent to assessment under the Equitable Distribution Law. Even before this case, courts have long recognized a limited exception to the unyielding application of analogous anti-assignment laws to satisfy previously adjudicated but unmet alimony and support obligations for the member’s spouse and dependents
 
 (see, Monck v Monck,
 
 184 App Div 656;
 
 Zwingmann v Zwingmann,
 
 150 App Div 358,
 
 supra; Cogollos v Cogollos,
 
 93 Misc 2d 406).
 

 Under the Equitable Distribution Law a distribution of property upon dissolution of the marriage now commonly stands in the place of ongoing support payments formerly provided for by a court-ordered alimony award. Courts must now consider any award of maintenance in making an equitable distribution of property
 
 (see,
 
 Domestic Relations Law § 236 [B] [5] [d] [5]) and vice versa
 
 (see, id.,
 
 § 236 [B] [6] [a] [1]). Indeed, a major goal of the equitable division of marital assets is to reduce the continued reliance on alimony and maintenance payments which tend to unnecessarily perpetuate the financial ties between former spouses
 
 (see, Matter of Spadaro [Chislett] v New York City Police Dept. Pension Serv.,
 
 115 Misc 2d 494, 497). The close interrelationship between support and property distribution awards renders any distinction between them for purposes of applying the anti-assignment law undeserved.
 

 The purpose of the anti-assignment law to preserve the funds for the member’s future support obligations is adequately served when an equitable distribution award is made
 
 *307
 
 with a view toward the parties’ specific support needs. Moreover, excepting support obligations from the anti-assignment statute’s reach prevents that legislation from becoming an instrument to deprive those intended beneficiaries from receiving the funds. Fundamentally, the pension-protective laws were not designed to relieve a member of the Retirement System of the special obligations to support his or her dependents, but to preserve the funds from claims that are "hostile” to those of the member’s dependents
 
 (American Tel. & Tel. Co. v Merry,
 
 592 F2d 118, 124, citing
 
 Schlaefer v Schlaefer,
 
 112 F2d 177, 185 [DC App 1940]).
 

 This conclusion does not fully resolve the question before us, however, because the assignment of decedent’s pension benefits was made here in a separation agreement, and not by court-ordered equitable distribution. Despite this distinction, the assignment in this case, negotiated with the parties’ express recognition of the wife’s equitable interest in the pension death benefits under Domestic Relations Law § 236 (B), is similarly enforceable against a claim to the funds interposed by a later-designated beneficiary, notwithstanding the terms of Administrative Code § 13-561.
 

 The Equitable Distribution Law recognizes that its goals may be achieved equally through a property division fashioned by a court which has considered a number of equitable factors (Domestic Relations Law § 236 [B] [5]), or by an agreement between the parties providing "for the ownership, division or distribution of separate and marital property”
 
 (id.,
 
 § 236 [B] [3]). Accordingly, separation agreements purporting to equitably assign pension benefits upon dissolution of a marriage should be accorded the same status and protection that court-ordered awards of pension benefits are entitled to. Such a holding is consistent with the statutory policy of encouraging nonlitigated resolution of the former spouses’ economic disputes. Our conclusion also comports with the trend in an increasing number of jurisdictions of recognizing such exemptions from anti-assignment statutes
 
 (see, e.g., Tenneco Inc. v First Va. Bank,
 
 698 F2d 688 [4th Cir 1983];
 
 American Tel. & Tel. Co. v Merry,
 
 592 F2d 118 [2d Cir 1979],
 
 supra; Koelsch v Koelsch,
 
 148 Ariz 176, 713 P2d 1234 [1986];
 
 In re Marriage of Hackett,
 
 113 Ill 2d 286, 497 NE2d 1152 [1986];
 
 Matter of Marriage of Sedbrook,
 
 16 Kan App 2d 668, 827 P2d 1222,1233-1234 [1992];
 
 Evans v Evans,
 
 111 NC App 792, 434 SE2d 856 [1993];
 
 Graham v Graham,
 
 396 Pa Super 166,
 
 *308
 
 578 A2d 459 [1990];
 
 Collida v Collida,
 
 546 SW2d 708 [Tex Civ App 1977]).
 
 *
 

 Finally, we are not unmindful of defendant Retirement System’s concern that it will be overburdened by the administrative work involved in processing attachments or assignments made pursuant to marital agreements or judgments
 
 (Caravaggio, supra,
 
 at 353). Nonetheless, any increased administrative costs are counterbalanced by the need to give effect to and further the policies underlying the enactment of equitable distribution concepts, such as protecting a former spouse’s ownership interest in pension benefits accrued during the marriage, ensuring continued reliance on bargained-for separation agreements negotiated with those principles in mind, and avoiding the "heavy burden that will be imposed on the public treasury if dependent spouses and children cannot enforce support rights and must instead resort to [public] assistance”
 
 (American Tel. & Tel.,
 
 592 F2d, at 125).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 Order affirmed, with costs.
 

 *
 

 Indeed, in recognition of this trend, Congress in 1984 amended the anti-alienation provision of the Employee Retirement Income Security Act (ERISA) by expressly excepting from its application qualified domestic relations orders (29 USC § 1056 [d] [3] [A]). The stated intention of this amendment was "to remove ERISA as a barrier to recovery of alimony, child support and
 
 property settlements” (Evans,
 
 111 NC App, at 797,
 
 supra,
 
 434 SE2d, at 859 [emphasis supplied]).