T.C. Memo. 1998-455


UNITED STATES TAX COURT


ALEC JEFFREY MEGIBOW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22268-96.               Filed December 28, 1998.

At issue are (1) the deductibility of $50,000
claimed by P as an alimony payment, (2) the
deductibility of $48,651.75 claimed by P as business-
related legal fees, (3) whether P must include in gross
income $30,000 received by him from his employer, and
(4) whether any underpayment is due to P's negligence
or disregard of rules or regulations.

<u>Held</u>, the $50,000 payment is not alimony; P has
failed to prove that his obligation to make that
payment would not survive the death of his ex-spouse.
<u>Held</u>, <u>further</u>, P has failed to prove that the legal
fees are either alimony or otherwise deductible.  <u>Held</u>,
<u>further</u>, P has failed to prove that the payment from
his employer was other than taxable compensation.
<u>Held</u>, <u>further</u>, P has failed to prove that he neither
was negligent nor disregarded rules or regulations.

<u>Anthony M. Bentley</u>, for petitioner.

<u>Donald E. Edwards</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:

## I. Introduction

By notice of deficiency dated July 18, 1996, respondent determined a deficiency in petitioner's 1993 Federal income tax of $48,275 and an accuracy-related penalty in the amount of $9,655.

Each party has conceded certain issues and the issues remaining for decision are (1) the deductibility of $50,000 claimed by petitioner as an alimony payment, (2) the deductibility of $48,651.75 claimed by petitioner as business-related legal fees, (3) whether petitioner must include in gross income $30,000 received by him from Radiology Affiliates of NY, and (4) whether any underpayment is due to petitioner's negligence or disregard of rules or regulations.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Certain facts have been stipulated. The stipulation of facts filed by the parties, with attached exhibits, is incorporated herein by this reference. We have need to find few facts in addition to those stipulated and, accordingly, shall not separately set forth those findings. We include our additional

findings of fact in the discussion that follows.  Petitioner bears the burden of proof.  Rule 142(a).

II.  The Claimed Payment of Alimony

A.  Background

Petitioner and his ex-wife, Marilyn, were divorced in 1993. A judgment of divorce (judgment of divorce) was entered by the Supreme Court of the State of New York, County of New York (the New York court).  The New York court made separate findings of fact and conclusions of law, which accompanied the judgment of divorce.  Among those findings were the following: (1) petitioner and Marilyn had, in open court, entered into a stipulation of settlement (the settlement stipulation) and (2) "[n]either of the parties seeks equitable distribution of the marital property, support and maintenance or relief other than as set forth in * * * [the settlement stipulation]".  The New York court incorporated the settlement stipulation in, and stated that it would survive, the judgment of divorce.  In pertinent part, the settlement stipulation provides:  It "shall satisfy all the economic issues arising out of their [petitioner's and Marilyn's] marriage."  Petitioner shall pay "maintenance" to Marilyn for a period of 2 years in the amount of $400 a week.  Petitioner shall also pay $50,000 to Marilyn, but only upon her vacating a certain apartment by a certain date.  In the event Marilyn fails to vacate the apartment by that date, the $50,000 she is to receive shall not be paid to her until she does vacate the apartment, and

she shall suffer a reduction in that amount of $2,000 a month as liquidated damages in respect of the reasonable rental value of the apartment.

During the proceeding giving rise to the settlement stipulation, Marilyn's attorney described the $50,000 payment as "in full and complete satisfaction of all claims of the defendant [Marilyn] in connection with equitable distribution". Petitioner's attorney in that proceeding did not object to that characterization. The New York court immediately thereafter stated that, upon delivery of the $50,000 (into escrow), Marilyn would transfer to petitioner her interest in certain "upstate" real property.

Apparently, Marilyn vacated the apartment on time and received the full $50,000 (the $50,000 payment), since petitioner deducted the $50,000 payment on his 1993 (calendar year) Federal income tax return as a deductible payment of alimony. The record does not establish the date that petitioner made the $50,000 payment. Respondent disallowed petitioner's $50,000 deduction on the ground that the $50,000 payment constituted a property settlement and not deductible alimony.

B. The Deduction for Alimony

It is generally understood that payments of alimony are deductible to the paying spouse (here, the ex-husband) and includable in income by the recipient spouse (here, the ex-wife). The axis along which that statement runs connects, at one end,

section 215 and, at the other, section 71.  In pertinent part,

section 215 provides:

>    (a) <u>General Rule</u>.--In the case of an individual,
> there shall be allowed as a deduction an amount equal
> to the alimony or separate maintenance payments paid
> during such individual's taxable year.
>
>    (b) <u>Alimony or Separate Maintenance Payments
> Defined</u>.--For purposes of this section, the term
> "alimony or separate maintenance payment" means any
> alimony or separate maintenance payment (as defined in
> section 71(b)) which is includable in the gross income
> of the recipient under section 71.

Section 71(a) provides:  "Gross income includes amounts received

as alimony or separate maintenance payments."  Section 71(b)(1)

provides:

>    <u>In general</u>.--The term "alimony or separate
> maintenance payment" means any payment in cash if--
>
>    (A) such payment is received by (or on behalf
> of) a spouse under a divorce or separation
> instrument,
>
>    (B) the divorce or separation instrument does
> not designate such payment as a payment which is
> not includable in gross income under this section
> and not allowable as a deduction under section
> 215,
>
>    (C) in the case of an individual legally
> separated from his spouse under a decree of
> divorce or of separate maintenance, the payee
> spouse and the payor spouse are not members of the
> same household at the time such payment is made,
> and
>
>    (D) there is no liability to make any such
> payment for any period after the death of the
> payee spouse and there is no liability to make any
> payment (in cash or property) as a substitute for
> such payments after the death of the payee spouse.

On brief, respondent concedes that the $50,000 payment satisfies the first three subparagraphs of section 71(b)(1). The parties agree that the only issue is whether the $50,000 payment satisfies subparagraph (D), i.e., whether petitioner's liability to make the $50,000 payment would have survived the death of Marilyn.

C. Discussion

1. New York Domestic Relations Law

To determine whether the $50,000 payment would survive the death of Marilyn, we must look to the law of New York. See Morgan v. Commissioner, 309 U.S. 78, 80 (1940) ("State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed."). In New York, actions for a divorce are classified as "matrimonial actions" and, with respect to matrimonial actions commenced after July 19, 1980, are governed by part B of section 236 of the Domestic Relations Law. N.Y. Dom. Rel. Law sec. 236B (McKinney 1986). Under the Domestic Relations Law, the parties to a matrimonial action may, by agreement, provide for (1) the division or distribution of separate and marital property and (2) the amount and duration of maintenance. N.Y. Dom. Rel. Law sec. 236B(3). If they have not so agreed, the court may order maintenance and determine the respective rights of the parties in their separate and marital property. N.Y. Dom. Rel. Law sec. 236B(5)(a). To aid the court in determining the respective

rights of the parties in marital property, the Domestic Relations Law provides: "Marital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties." N.Y. Dom. Rel. Law sec. 236B(5)(c). The terms "maintenance" and "distributive award" are defined in the Domestic Relations Law, N.Y. Dom. Rel. Law sec. 236B(1)(a) and (b), respectively, as follows:

> (a) The term "maintenance" shall mean payments provided for in a valid agreement between the parties or awarded by the court in accordance with the provisions of subdivision six of this part, to be paid at fixed intervals for a definite or indefinite period of time, but an award of maintenance shall terminate upon the death of either party or upon the recipient's valid or invalid marriage, or upon modification pursuant to paragraph (b) of subdivision nine of section two hundred thirty-six of this part or section two hundred forty-eight of this chapter.

> (b) The term "distributive award" shall mean payments provided for in a valid agreement between the parties or awarded by the court, in lieu of or to supplement, facilitate or effectuate the division or distribution of property where authorized in a matrimonial action, and payable either in a lump sum or over a period of time in fixed amounts. Distributive awards shall not include payments which are treated as ordinary income to the recipient under the provisions of the United States Internal Revenue Code.

2. <u>Petitioner's and Respondent's Arguments</u>

Respondent argues that the $50,000 payment was made in settlement of property rights: "The $50,000 payment is part of a global property settlement." Respondent reaches that conclusion based on the settlement stipulation. He directs us first to the separate provision dealing with "maintenance" and then to Marilyn's attorney's description of the $50,000 payment as "in

full and complete satisfaction of all claims of the defendant [Marilyn] in connection with equitable distribution." He also finds support in the New York court's discussion of other property transfers in proximity to its discussion of the $50,000 payment.

Petitioner relies on ambiguity as his defense. In his post-trial memorandum, petitioner states:

> It has always been our position, and indeed our original planned strategy, that the nature of the $50,000 payment was not characterized in open court. The stipulation was therefore silent on that matter. The invitation by the divorce court to submit a more particularized document left open the issue of post spousal death liability therefor, to be addressed, if at all, by supplementation of the agreement then recorded. This was never done.

Apparently, petitioner believed that, if the $50,000 payment was not labeled "an equitable distribution", he might have been able to avoid his obligation to make that payment if Marilyn died after they were divorced and before any payment was made. Nevertheless, petitioner admits: "[M]any might come to the conclusion that the $50,000 payment was in the nature of equitable distribution".

### 3. Analysis

The $50,000 payment was made pursuant to the settlement stipulation and, although incorporated into the judgment of divorce, it cannot be characterized as an amount "awarded by the court" within the meaning of N.Y. Dom. Rel. Law sec. 236B(1)(a) ("maintenance") or (b) ("distributive award"). Cf. Kaplan v.

Kaplan, 82 N.Y. 2d 300, 307, 624 N.E.2d 565 (1993) (assignment of decedent's pension benefits made in separation agreement incorporated into judgment of divorce was not made by court-ordered equitable distribution). Because the $50,000 payment was not made by award of the New York court, the limitation of N.Y. Dom. Rel. Law sec. 236B(1)(a) ("an award of maintenance shall terminate upon the death of either party") is inapplicable. Petitioner, nevertheless, relies on the calculated ambiguity he created to establish that his obligation to make the $50,000 payment in the event of Marilyn's death was fixed neither by the settlement stipulation nor by an "equitable distribution", which, apparently, he believed would create a fixed obligation upon his divorce from Marilyn. Petitioner was perhaps a little too clever in his tactics. The settlement stipulation obligates petitioner to make the $50,000 payment and, although the amount of petitioner's obligation depends upon the date on which Marilyn vacated a certain apartment, Marilyn's survival is not set forth as a condition precedent to petitioner's obligation to pay, nor has petitioner otherwise shown that such condition existed at the time he made the $50,000 payment. See Webb v. Commissioner, T.C. Memo. 1990-540 (language in New York separation agreement that husband "shall" pay sufficient to create a liability enforceable by ex-wife's estate should she have died after the agreement and before payment); cf. Brower v. Brower, 653 N.Y.S.2d 386, 387-388 (App. Div. 1997) (intent important in determining whether

obligations in separation agreement were to be performed notwithstanding death of husband).

D. Conclusion

Petitioner has failed to prove that the obligation to make the $50,000 payment would have ended had Marilyn died before the payment. Therefore, petitioner has failed to prove that the $50,000 payment was alimony within the meaning of sections 71(b) and 215(b). Petitioner is not entitled to a deduction for the $50,000 payment under section 215(a). Respondent's determination of a deficiency is sustained to the extent respondent denied petitioner's deduction of the $50,000 payment.

III. Business-Related Legal Fees

A. Introduction

On his 1993 Federal income tax return, petitioner claimed $58,581 as a deduction for business-related legal fees. The amount of the deduction remaining in issue is $48,651.75. Petitioner now claims that $25,000 of that amount, which was paid to Charles P. Gallo (the Gallo payment), petitioner's wife's attorney in the matrimonial action, is deductible as the payment of alimony. The remaining $23,651.75 was paid to petitioner's attorney Anthony M. Bentley (the Bentley payment), and petitioner claims it was paid for tax planning with respect to the divorce and for business-related legal advice.

B.  Gallo Payment

The issue and arguments here are basically the same as they were with respect to the $50,000 payment.  The issue is whether petitioner's obligation to make the Gallo payments was conditioned on Marilyn's survival.  Petitioner became obligated to make the Gallo payment pursuant to the settlement stipulation.  The settlement stipulation required petitioner to place $12,500 of the amount to be paid to Mr. Gallo in an escrow account.  Petitioner made the Gallo payment in 1993.  Our analysis is the same as with respect to the $50,000 payment.  Petitioner has failed to prove that his obligation to make the Gallo payment was conditional on Marilyn's survival until the time of payment.  For that reason, petitioner had failed to prove that it was a deductible alimony payment.  See Smith v. Commissioner, T.C. Memo. 1998-166 (to be a deductible alimony payment, obligation to pay wife's attorney's fees must be extinguishable on her death); Rebura v. Commissioner, T.C. Memo. 1997-38 (same), affd. without published opinion 139 F.3d 907 (9th Cir 1998).  Respondent's determination of a deficiency is sustained to the extent respondent denied petitioner's deduction for the Gallo payment.

C.  Bentley Payment

Petitioner claims that the Bentley payment was for legal advice concerning tax planning aspects of the marital dissolution and business-related matters.  Petitioner did not testify. Mr. Bentley testified as to the work he did to earn that fee.

His testimony was vague, unsupported by any billing records or any other tangible work product that would indicate the business or tax-related nature of the work, and does not convince us that any of the expense was related to petitioner's trade or business or tax-related matters. Cf. United States v. Gilmore, 372 U.S. 39 (1963) (to be deductible as a business or profit seeking expense, it is insufficient that an expenditure have a business or income-related consequence if the origin of the expense is not in the business or profit seeking activity). We accord Mr. Bentley's testimony no weight, and, thus, petitioner has failed to carry his burden of proof on this matter. Respondent's determination of a deficiency is sustained to the extent respondent denied petitioner's deduction for the Bentley payment.

IV. Payment From Radiology Affiliates

Radiology Affiliates of NY (Radiology Affiliates) employed petitioner during 1993. Petitioner received $30,000 from Radiology Affiliates during 1993 (the $30,000 payment), which he did not report as gross income. Respondent determined that the $30,000 payment was compensation for services to be performed in the future and increased petitioner's gross income by $30,000 on account thereof. Petitioner argues that the $30,000 payment was not an item of gross income because it was a loan.

Generally, compensation for services is an item of gross income, including compensation received for future services. Sec. 61(a)(3); e.g., Huebner v. Commissioner, T.C. Memo. 1966-73

(compensation received for future services included in gross income in year compensation received).  Petitioner does not quarrel with that result, but insists that the $30,000 payment was a loan, "secured by a lien on petitioner's 1994 income, which income was ultimately reduced by netting out the loan."  Respondent argues that petitioner has failed to prove that the $30,000 payment was received as a loan.

In order to be a bona fide loan, petitioner must demonstrate that a debtor-creditor relationship was created from the outset and that the payment constituted an enforceable obligation to repay the $30,000.  See Beaver v. Commissioner, 55 T.C. 85, 91 (1970); McCormack v. Commissioner, T.C. Memo. 1987-11.  This relationship "is a question of fact to be determined upon a consideration of all the evidence."  Beaver v. Commissioner, supra at 91.  We have looked at whether there were notes of indebtedness or whether the parties agreed to an interest rate for the loan in determining if the parties did in fact have the intent to establish a debtor-creditor relationship.  See McCormack v. Commissioner, supra.  We have also stated, "An intent to satisfy or repay 'loans' from future earnings of a corporation or by rendering services in the future does not satisfy the requirement for a valid debt, i.e., an unconditional obligation to repay."  Nix v. Commissioner, T.C. Memo. 1982-330 (citing Beaver).  Rather, such advance payments "constituted

taxable income in the years received."  <u>Beaver v. Commissioner</u>, <u>supra</u> at 91.

Petitioner has failed to prove that the $30,000 was a loan. Petitioner has provided us with little evidence to support his claim that the $30,000 was a loan.  We are not persuaded by Mr. Bentley's testimony that he prepared a Form 1099, Miscellaneous Income, showing zero miscellaneous income paid by Radiology Affiliates, to correct "the 1099 which was * * * erroneously submitted by the employer contemporaneously with the transaction".  Petitioner has failed to produce any loan documents or testimony of his own or of anyone from Radiology Affiliates to substantiate his claim of a loan.  This failure to produce such evidence leads to the inference that either such evidence does not exist or would be negative to petitioner. <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946) ("the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable"), affd. 162 F.2d 513 (10th Cir. 1947).  Petitioner has not given us any reason to believe that the $30,000 was a loan, and thus, we find that the $30,000 payment was an item of gross income for 1993.

Respondent's determination of a deficiency is sustained to the extent respondent included the $30,000 payment as gross income.

## V.  Negligence or Disregard of Rules or Regulations

Respondent determined an accuracy-related penalty under section 6662 on the whole of petitioner's underpayment of tax for 1993 on account of petitioner's negligence or disregard of rules or regulations.  In the petition, petitioner assigned error to that determination, but did not aver any facts in support of that determination.  In his trial memorandum, petitioner again asserted that the section 6662 penalty was in dispute; nevertheless, he did not further discuss the penalty.  Petitioner did not address the penalty in his posttrial filing.  We assume that petitioner's defense to the section 6662 penalty is that there is no deficiency in tax.  Since we have sustained portions of respondent's determination of a deficiency, to that extent, petitioner's defense is unsuccessful, and petitioner has failed to carry his burden of showing that neither was he negligent nor did he disregard rules or regulations.  Respondent's determination of a penalty under section 6662 is sustained, modified only to take into account respondent's concessions.

Decision will be entered

under Rule 155.