OPINION OF THE COURT
Eugene E. Peckham, S.
This is an action on an agreed statement of facts submitted *251 pursuant to CPLR 3222. Petitioner, BCT Federal Credit Union, has filed four claims for monies loaned to decedent, Josephine C. King, during her lifetime. The decedent’s estate does not have sufficient assets to pay the claims and is therefore insolvent.
The dispute centers upon three nonprobate assets of the decedent which passed to her son, Richard A. King, and on each of which he was the designated beneficiary. The three assets are: (1) AARP five-year term life insurance policy with a death benefit of $10,000 of which Mrs. King was the insured and owner; (2) New York State Teachers’ Retirement System retirement pension from which Richard received a death benefit payment of $461,510.83; and (3) an Internal Revenue Code (26 USC) § 403 (b) account sponsored by decedent’s employer, the Susquehanna Valley School District, which was invested in various Oppenheimer mutual funds with a value on September 30, 2001 of $89,730.95. BCT maintains the balance due on its claims should be paid out of these nonprobate assets.
It is certainly true as recently stated by Surrogate Preminger of New York County that: “The proliferation of testamentary substitutes, however, has left the law in a state of confusion over the rights of creditors to other assets that do not pass under the will or as part of intestate administration.” (Matter of Gallet, 196 Misc 2d 303, 307 [Sur Ct, NY County].)
BCT argues that section 273 of the Debtor and Creditor Law applies to the estate. It provides: “Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.” It should be noted that section 273 does not require actual intent to defraud, nor does petitioner make any claim of actual fraud. (Letter mem of Apr. 17, 2003.) Petitioner also does not claim that decedent was insolvent at any time during her lifetime, only that the estate became insolvent after her death.
The estate’s attorneys respond that the insurance is exempt from creditor claims because of section 3212 of the Insurance Law. Further, that the other nonprobate assets are exempted by EPTL 13-3.2 (a), which provides that the rights of a person to receive a pension, retirement, death benefit or annuity “shall not be impaired or defeated by any statute or rule of law governing the transfer of property, by will, gift or intestacy.”
*252 The difficulty with the argument based upon EPTL 13-3.2 is that subdivision (b) specifically states that it “does not limit article 10 of the debtor and creditor law.” Section 273 is part of article 10 and thus could continue to apply despite the general language of EPTL 13-3.2 (a).
The problem with the application of section 273 is that the statutes governing pensions and insurance have so-called anti-alienation provisions. The federal law covering pensions, the Employee Retirement Income and Security Act of 1974 (ERISA), has such an anti-alienation provision. (29 USC § 1056 [d]; Internal Revenue Code [26 USC] § 401 [a] [13].) However, ERISA does not apply to plans sponsored by state or local government. (29 USC § 1003 [b] [1].) Thus, a New York State Teachers’ Retirement pension is not covered by ERISA. (Patterson v Shumate, 504 US 753 [1992].)
Both the New York Insurance Law applicable to the insurance death benefit and the New York Education Law applicable to the Teachers’ Retirement System death benefit contain anti-alienation provisions. Section 3212 (b) (1) of the Insurance Law provides:
“If a policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary, or made payable otherwise to a third person, such third person shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person effecting the insurance.”
Clearly this law provides that the rights of a beneficiary of insurance prevail over claims of decedent’s creditors. Certainly this is consonant with the primary purpose of life insurance which is to protect the dependent beneficiaries of the insured by providing them with funds to live on after the death of the insured. Thus, BCT is not entitled to be paid on its claims out of the insurance proceeds in the hands of the beneficiary. (Males v New York Life Ins. Co., 48 AD2d 50 [3d Dept 1975]; Matter of Adas, 70 Misc 2d 847 [Sur Ct, Erie County 1972].)
The anti-alienation provision in section 524 of the Education Law provides:
“The right of a teacher to a pension, an annuity, or a retirement allowance, to the return of contributions, any benefit or right accrued or accruing to any person under the provisions of this article, and the moneys in the various funds created hereunder, are hereby exempt from any state or municipal *253 tax, and shall not be subject to execution, garnishment, attachment or any other process whatsoever, and shall be unassignable except as in this article specifically provided.”
The purpose of a pension is quite different from life insurance. The purpose is to insure that the employee has income to live on during retirement and later years. Only secondarily is the death benefit under a pension plan intended to provide funds to the participant’s heirs and beneficiaries.
Nonetheless, the courts have held that the death benefit payable to a beneficiary under a teacher’s pension is exempt from the claims of creditors of the decedent. (Matter of Distefano, 167 Misc 678 [Sur Ct, NY County 1938]; Matter of Dickerson, 168 Misc 54 [Sur Ct, NY County 1938]; Hecht v Whalen, 174 Misc 146 [Sup Ct, NY County 1940]; Matter of Gallet, id.) Distefano is nearly identical to the case at bar. Construing language identical to section 524 in the Greater New York Charter concerning the Teachers’ Retirement Fund, the court held that a pension death benefit paid to the administratrix of the deceased teacher’s estate was exempt from the claim of a bank creditor. The court said:
“The underlying purpose of the statute is, first, the public good in stabilizing the status of persons in the educational system, second, the good of the member himself in guarding him against the results of his own improvidence and corollary to this the protection of the dependents of a member whose anxieties for their well-being are not a negligible factor in his public service even in the case of an improvident or unfortunate member. The court holds that this statute immunizes the funds from the claims of creditors even after they reach the hands of the representative of the estate of the deceased member.” (167 Misc at 680 [emphasis added].)
Turning to the 403 (b) annuity, we have a different situation. It is a program made available to its employees by the Susquehanna Valley School District and is not part of the New York State Teachers’ Retirement System. Nor is the 403 (b) plan covered by ERISA since the plan is a local government sponsored plan. (29 USC § 1003 [b] [1].) Thus, neither the anti-alienation provisions of ERISA nor those of Education Law § 524 apply to the 403 (b) plan.
The plan is established pursuant to a salary reduction agreement between the School District and decedent. Internal Reve *254 nue Code § 403 (b) (7) provides that amounts paid by the employer “shall be treated as amounts contributed by him for an annuity contract for his employee.” Section 403 (b) (7) also provides that the amounts may be invested in a regulated investment company or mutual fund such as Oppenheimer. Thus the Internal Revenue Code treats a 403 (b) plan as an annuity, even when, as here, it is invested in mutual funds. It is also a retirement plan since distributions may not begin before age 59V2, except in the event of disability, severance from employment or hardship, without incurring a 10% penalty. (Internal Revenue Code § 403 [b] [11]; § 72 [t]; § 4974 [c].)
As previously stated, EPTL 13-3.2 (a) provides that the rights of beneficiaries in retirement plans and annuities “shall not be impaired or defeated by any statute or rule of law governing the transfer of property by will, gift or intestacy.” The Third Department has recently held in reliance on this section that an annuity is not subject to the claims of creditors. (Matter of Clotworthy, 294 AD2d 720 [3d Dept 2002].)
In an even more recent case, Surrogate Preminger has also interpreted section 13-3.2 as prohibiting creditors from reaching the proceeds of several types of retirement plans payable to a revocable trust as beneficiary. The plans included a state employee’s retirement plan death benefit, an IRA and a Federal Thrift Savings Plan death benefit. The Surrogate said:
“The court infers that the Legislature intends that the assets enumerated in EPTL 13-3.2 are exempt from creditors’ claims after death, as they are in life.
“This interpretation of the statute is supported by the inclusion of subdivision (b) which provides that ‘[t]his section does not limit article 10 of the debtor and creditor law * * *,’ a reference to the Fraudulent Conveyances Act. Inclusion of subdivision (b) would be meaningless if the statute did not operate to extend asset protection where fraudulent conveyance is not a factor.” (Matter of Gallet, 196 Misc 2d at 309 [Sur Ct, NY County].)
Section 3212 (d) (1) of the Insurance Law provides that the lifetime rights and benefits of an annuitant “shall not be subject to execution” and EPTL 13-3.2 specifically includes under its provisions retirement plans and annuities. It follows, therefore, that annuities are “exempt from creditor’s claims after death, as they are in life,” where, as here, there is no actual *255 intent to defraud. (Matter of Gallet, supra; Matter of Clotworthy, supra; cf. CPLR 5205 [c]; EPTL 7-3.1.)
Either by statute or case law, virtually every type of retirement plan is exempt from the claims of the decedent’s creditors. Anti-alienation applies to ERISA plans (29 USC § 1056 [b]), New York State employees’ retirement plans (Retirement and Social Security Law § 110), New York State teachers’ retirement plans (Education Law § 524), Individual Retirement Accounts (CPLR 5205 [c]), Federal Thrift Savings Plans (Matter of Gallet), and life insurance and annuities (Matter of Clotworthy, Insurance Law § 3212). This court perceives of no logical reason why a 403 (b) retirement annuity should not similarly be exempt from the claims of decedent’s creditors after death.
The cases cited by petitioner in support of its position that the payment of the retirement benefits is a fraudulent conveyance under section 273 of the Debtor and Creditor Law are not applicable. Lade v Parker (65 Misc 2d 369 [Sup Ct, Albany County 1971]) was a forerunner of the Court of Appeals case Kaplan v Kaplan (82 NY2d 300 [1993]). In both cases an ex-wife was required to be designated as beneficiary of the teacher’s pension death benefit by virtue of the terms of their separation agreement. In Kaplan, the Court of Appeals held that “a separation agreement expressly distributing pension benefits as marital property pursuant to the Equitable Distribution Law is enforceable and exempt from application of the statutory anti-assignment provisions governing the TRS pension funds.” (82 NY2d at 303.) However, the Court went on to say: “Fundamentally, the pension-protective laws were not designed to relieve a member of the Retirement System of the special obligations to support his or her dependents, but to preserve the funds from claims that are Tiostile’ to those of the member’s dependents.” (82 NY2d at 307.) Thus the Court was recognizing the special status of a dependent spouse and the right to receive the benefits of the economic partnership that is marriage, as well as the contractual rights arising from the separation agreement. Similarly, there is exempted from the anti-alienation provisions of ERISA payments to a spouse pursuant to a qualified domestic relations order. (Internal Revenue Code § 401 [a] [13] [B].) Although petitioner would like to equate the spouse’s status to, that of a creditor, obviously they are not the same, since the spouse is a dependent entitled to support and maintenance. The commercial creditor’s status is “hostile” to the plan participant and his or her dependents and so cases directing payments out of the pension or annuity for *256 support and maintenance of a spouse lend no support to the credit union’s position.
Petitioner also cites Matter of Granwell (20 NY2d 91 [1967]) in support of its claim to reach the retirement benefits. Gran-well again involved rights provided in the separation agreement, but for decedent’s child of the first marriage. The separation agreement provided that the child must receive one half of the ex-spouse’s estate at death. Decedent established a revocable inter vivos trust for his second wife and also established joint accounts with the second wife. The Court held that the trust and one half of the joint property belonged to decedent at the time of his death and the child’s right to one half of the estate should be paid out of those assets pursuant to the separation agreement. Again, the case is distinguishable since revocable trusts and joint property are not the same as pension or annuity benefits. There is no anti-alienation law applicable to either revocable trusts or joint property. The grantor of a revocable trust has an absolute right to terminate the trust at any time and receive back the assets, and thus is the owner of the trust assets. A revocable trust is subject to claims of the grantor’s creditors. (Vanderbilt Credit Corp. v Chase Manhattan Bank, 100 AD2d 544 [2d Dept 1984].) Similarly, a joint account is considered to be owned one half by each joint owner until the death of one of them (Matter of Bricker v Krimer, 13 NY2d 22 [1963]), and thus was available to pay creditors. Further, the child’s rights were those of a dependent entitled to support under the separation agreement. A commercial creditor has no such dependency status and again Granwell does not support the credit union’s position either.
BCT also argues that section 273 applies because the estate was “rendered insolvent” by the conveyance of the insurance and retirement proceeds to Richard King pursuant to the beneficiary designations. A technical answer to this proposition, as admitted by petitioner at page three of its reply brief, is that the defendant was not rendered insolvent by the mere act of designating a beneficiary. Likewise, the estate was not rendered insolvent by payment to the beneficiary because these nonprobate assets never belonged to the estate or its fiduciary in his fiduciary capacity and thus the estate could not and did not make a conveyance of them. The broader answer as set forth earlier is that the Legislature has exempted insurance and retirement plan proceeds from the claims of a decedent’s creditors.
Accordingly, it is held that petitioner is not entitled to be paid on its claims from the insurance proceeds, the Teachers’ *257 Retirement System pension, nor the 403 (b) annuity. The proceeds are exempt from the claims of commercial creditors.
The court has considered the other arguments of petitioner and finds them to be without merit.