The Honorable Allen Maxwell State Representative 188 Southern Oaks Monticello, Arkansas 71655-5737
Dear Representative Maxwell:
I am writing in response to your request for an opinion on four questions concerning Act 773 of 1999, the relevant part of which is codified at A.C.A. § 24-7-1303 (b)(2) (Supp. 2005). Your questions are as follows:
 1. If a school district hires a superintendent not covered by the Teacher Deferred Retirement Option Plan (T-Drop), would the school district be permitted under Act 773 of 1999 to provide a tax sheltered annuity as a part of that superintendent's compensation package?
 2. If your answer to the above stated question is no by reason of the tax sheltered status of the annuity, would your opinion be the same if the annuity were not tax-sheltered?
 3. If the school district chooses to employ a superintendent who has already retired, would they be permitted to provide such a tax-sheltered annuity as part of that superintendent's compensation package?
 4. If your answer to the above stated question is no by reason of the tax sheltered status of the annuity, would your opinion be the same if the annuity were not tax-sheltered?
RESPONSE
In response to your first question, in my opinion Act 773, standing alone, would not prohibit such action. I can find no other provision of Arkansas law that expressly authorizes or prohibits the action you describe. After a review of Arkansas law, however, it appears that it in all likelihood does not currently prohibit the provision of tax-sheltered annuities to superintendents not participating in the T-DROP program. I must note, however, that recent legislation has placed certain restrictions on superintendent contracts and the issue of superintendent compensation has been the topic of recent legislative inquiry. Caution is therefore advisable on this issue. In addition, there are some instances in which the provision of such annuities could run afoul of federal tax law. Such plans may be structured in a number of different ways and I am not in a position to advise individual school districts or individual employees as to their compliance with federal tax law. A response to your second question is unnecessary in light of the above. I cannot opine on your third question without detailed reference to all the facts concerning the reemployment of a retired individual. A response to your fourth question is unnecessary.
Question 1 — If a school district hires a superintendent notcovered by the Teacher Deferred Retirement Option Plan (T-Drop),would the school district be permitted under Act 773 of 1999 toprovide a tax sheltered annuity as a part of thatsuperintendent's compensation package?
Your questions concerning "tax-sheltered annuities" revolve around Act 773 of 1999, codified at A.C.A. § 24-7-1303, a provision of the Teacher Retirement System law regarding the "T-DROP" program. The Teachers' Deferred Option Retirement Plan or "T-DROP," has been described as an "important incentive to keep experienced teachers in the classroom rather than retiring completely. . . ." Acts 1999, No. 1590, § 8. Members of the Teachers' Retirement System with thirty years of service (or in some cases twenty-eight years), may elect to participate in T-DROP in lieu of terminating retirement and accepting a service retirement benefit. A.C.A. §§ 24-7-1301 and -1314 (Repl. 2000). Under the program, the individual continues employment, but themember contributions cease and the service benefit to which the member would have been entitled if he or she had retired are paid into the "DROP" account. A.C.A. §§ 24-7-1305 and -1307. Upon retirement, and the receipt of a monthly retirement benefit from the system, the member may elect to receive the balance in the DROP account as a lump sum or as a monthly benefit. A.C.A. §24-7-1308. Under prior law, employer contributions on behalf of the member also ceased during the DROP period, but more recent law has been enacted to phase back in a requirement of employer contributions during the DROP period. See Act 992 of 2003, amending A.C.A. 24-7-1303.
The relevant portion of Act 773 (A.C.A. § 24-7-1303), for purposes of your question, appears to be subsection (b)(2), which provides as follows:
 Except for employer contributions to the system, the school district shall not make contributions to any tax-qualified retirement plan on behalf of any employee participating in the Teacher Deferred Retirement Option Plan. However, this prohibition shall not be applicable to the extent necessary to comply with contractual obligations incurred by a school district prior to February 1, 1999.
The emergency clause of Act 773 of 1999 (Section 5), provides as follows:
 It is found and determined by the Eighty-second General Assembly of the State of Arkansas that the deferred retirement option (DROP) for the Teacher Retirement System requires no employer contributions by the school districts,[1] that some school districts are unnecessarily expending funds for employees on the DROP, that this threatens the general level of education of all students, especially in small school districts where every dollar is needed, and that this law will immediately correct this situation so school districts will retain all necessary funds for expenditure for the general benefit of the students and not make unnecessary expenditures to benefit certain select employees.
Act 773 was presumably passed in response to the practice of some school districts of taking what would have been the required employer contribution had the employee not elected to participate in T-DROP, and using it to purchase another tax-sheltered retirement plan or tax-sheltered annuity. See e.g., Op. Att'y Gen. 1996-153.
The language of A.C.A. § 24-7-1303(b)(2) above addresses only employees participating in T-DROP. This statute, standing alone, therefore does not prohibit contributions to a "tax qualified retirement plan"[2] for employees not participating in T-DROP. This is true whether the plan is tax-sheltered or not tax-sheltered. In response to your first question, therefore, for purposes of Act 773, a school district is "permitted" to provide such an annuity "under Act 773 of 1999" as long as the employee is not participating in T-DROP.
Although Act 773 of 1999 may stand as no barrier to the provision of such a tax-sheltered annuity, other law must still be examined to determine whether the provision of such an annuity is permissible. It might be helpful at this juncture to explain the nature of "tax-sheltered annuities."
"Tax-sheltered annuit[ies]" have been described as ". . . annuity programs maintained by an eligible employer in compliance with the technical requirements of section 403(b) of the Internal Revenue Code. . . ." David E. Gordon and Donald R. Spuehler,Questions and Answers Explaining the New Tax Rules Applicable toTax-Sheltered Annuities, 17 J.C. U.L. 435, 437,438 Journal of College and University Law (Spring, 1991). Annuities may be "tax-sheltered" to the extent they are purchased by an employer who is either a tax-exempt 501(c)(3) organization, or "a State, a political subdivision of a State, or an agency or instrumentality of any one or more of the foregoing, and the employee is performing (or has performed) services for an educational institution. . . ." See 26 C.F.R. 1.403.1(b)(1)(i) and (ii). Superintendents of public school districts appear to be eligible employees. See 26 C.F.R. 1.403(b)-1 (b)(5) ("An employee who performs services including the operation and direction of a State's or a political subdivision's education program as carried on through educational institutions . . . is an employee performing services indirectly for such institutions.")
With regard to the operation of such "tax-sheltered annuities," they can be structured in different ways, either involving a "salary reduction agreement," whereby the employee agrees to place a portion of his salary toward a tax-sheltered annuity, (sometimes referred to as "elective deferrals"), or as solely employer contributions that are not made as a part of a salary reduction agreement. The latter can include matching contributions, discretionary contributions, and mandatory contributions from an employer (sometimes called "nonelective contributions"). See Internal Revenue Code Publication 571.
The issue for resolution in response to your first question is whether any provision of law other than Act 773 of 1999 would prohibit the inclusion of a "tax-sheltered annuity" in the compensation package of a school superintendent.
With regard to school superintendents, the Arkansas Code provides that:
 (a) The public school districts in the state shall each employ a superintendent of schools, whose qualifications and duties shall be prescribed by the General Assembly and the State Board of Education.
 (b) "Superintendent of schools" is defined as the executive officer of a school district board of directors directing the affairs of the school district and teaching not more than one-half (1/2) of the time in the school day.
A.C.A. § 6-13-109 (Repl. 1999).
In addition, the issue of superintendent contracts is addressed at A.C.A. § 6-17-301 (Supp. 2005), originally enacted in 1969, as follows:
 (a) Except as prohibited under subsections (c) and (d) of this section,[3] school boards may employ superintendents, deputy superintendents, assistant superintendents, and high school principals, as well as department heads, coaches, teachers, and other certified personnel, by written contract for a period of time not more than three (3) years.
(b) The contracts may be renewed annually.
One of my predecessors described what has been the typical form of superintendent's contract as follows:
 . . . it is my understanding that superintendents' contracts are typically executed as three-year contracts, but each year a new three-year contract is executed and thus" renewed." A superintendent's salary for each of the three years, or a formula for calculating such salary, is typically set out in the contract. Id. See also Hampton School District v. Phillips, 251 Ark. 90, 470 S.W.2d 934 (1971).
Op. Att'y Gen. 1998-133, quoting Op. Att'y Gen. 1991-427. See,however, footnote 3, supra, setting out A.C.A. § 6-17-301(c), which contains a temporary restriction as the extension of superintendent contracts.
Other than A.C.A. § 6-17-301, I have found no provisions of the Arkansas Code addressing or detailing the allowable fringe benefits or terms which might be included in the contract of a school superintendent. State law is otherwise silent on this issue. It is clear that any compensation policies approved by the teachers' personnel policy committee "shall not apply to the chief administrator who is charged with the administration of salary policy for all employees." A.C.A. § 6-17-204(c)(3) (Supp. 2005). See also Op. Att'y Gen. 1998-133. Superintendents are thus not subject to the policies set out through that procedure. In addition, school superintendents are not state employees subject to various fiscal and appropriation laws affecting employees of state agencies. Compare Op. Att'y Gen. 2002-109
(concluding that state fiscal laws applicable to state agencies likely prohibited the purchase of a life insurance benefit plan for the president of a community college).
It may be argued that Act 773 of 1999, at least by negative implication, contemplates the provision of additional "tax-qualified retirement plans" for members of the Teachers' Retirement System, at least where those members do not participate in the T-DROP program. Act 773 clearly does not prohibit such annuities for members not participating in T-DROP. Additionally, the definition of "salary" for purposes of computing benefits under the Teacher Retirement System contemplates the provision of tax-sheltered annuities to system members. See A.C.A. § 24-7-202(24)(C) and (D) (Supp. 2005) (including, in the definition of "salary," "employee contributions to tax-sheltered annuities" and "[m]oney which is in lieu of remuneration and which is used by an employer to purchase a qualified tax-sheltered annuity or a life insurance policy for an employee . . .").
In addition, I will note that at least one operative subchapter[4] in the Arkansas Code addresses tax-deferred compensation plans of members of the Arkansas Teacher Retirement System, and presumably includes school superintendents within its ambit. Public school employees, including superintendents, are eligible for participation in the "deferred compensation" plans authorized at A.C.A. §§ 21-5-501 to -510. That subchapter authorizes the creation of deferred compensation "programs," and authorizes the state or any county, city, town, or other "political subdivision" to agree, by contract, with any employee to defer, in whole or in part, any portion of the employee's future compensation to a "deferred compensation program." A.C.A. § 21-5-504(a). School districts are "political subdivisions."See e.g., Muse v. Prescott School Dist., 233 Ark. 789, 790,349 S.W.2d 329 (1961); and Op. Att'y Gen. 1996-187) ("Clearly, school districts are political subdivisions.")
Administration of deferred compensation programs other than the state government employees' program shall be under the direction of the "appropriate officer designated by the county, city, town, or other political subdivision." Under the applicable subchapter, the administrator of the deferred compensation program may:
 (A) Contract for, purchase, or otherwise procure annuity contracts for the deferred compensation program; and
 (B) Through a trust or custodian, contract for purchase or otherwise procure fixed or variable life insurance contracts, mutual funds, pooled investment funds, or such other investment vehicles that comply with state and federal laws and which permit the deferral of compensation for income tax purposes.
 (2) If an annuity or life insurance contract is purchased, then it must be purchased from an insurance company licensed to contract business in this state, and any insurance agent selling such contracts must be licensed by this state.
A.C.A. § 21-5-504(b)(1) and (2).
The administrator of such a plan may "make payments of premiums for the purchase of annuity contracts under the deferred compensation program;" and may "make payments to a trustee or custodian holding fixed or variable life insurance contracts, annuity contracts, mutual funds, pooled investment funds, or other investment vehicles. . . ." A.C.A. § 21-5-507(a)(1) and (2). Such payments "shall not be construed to be a prohibited use of the general assets of the state, county, city, town, or other political subdivision." Id. at (b). The subchapter does not specify under which provision of the Internal Revenue Code the program must be operated. The programs may thus presumably be adopted under the appropriate I.R.S. Code provision for affected entity's employees. There is some evidence, however, of the legislature's intention to ensure compliance with26 U.S.C.A. § 457 in the implementation of this subchapter. See Acts 2001, No. 1596, § 6. It is my understanding that school employees do not generally participate in the 457(b) deferred compensation program for state employees administered under this subchapter by the Employee Benefits Division of the Department of Finance and Administration, but that some school districts administer § 403(b) plans under the authority of this subchapter.
Sections 21-5-501—510 provide authority for the provision of a deferred compensation program (in addition to the Teacher Retirement System), for the employees of a school district. It is not clear factually, however, whether your question contemplates a tax-sheltered annuity provided to a superintendent under the provisions of this subchapter. You have not provided any facts as to how the "tax sheltered annuity" would be structured in this instance. The question you present, in any event, does not appear to involve the creation of a deferred compensation "program" for all employees, but the provision of a tax-sheltered annuity in the contract of only one employee, the school superintendent. Whether this action is authorized under A.C.A. §§ 21-5-501 to -510 is somewhat unclear. Although some language in the subchapter authorizes the governmental entity's agreement with "any employee" to defer compensation (A.C.A. § 21-5-504(a)), other provisions of the subchapter refer to deferred compensation "plans" or "programs" for "employees." See A.C.A. §§ 21-5-502;21-5-503; 21-5-504 and 21-5-505. My predecessor has concluded, however, that this subchapter, as well as other subchapters offering employee benefit plans, "contemplate the offering of plans and programs to all eligible employees of an institution or agency and not to just one individual." Op. Att'y Gen.2002-109.[5]
With regard to the possible exclusivity of this "deferred compensation" plan, however, there is language in the subchapter indicating that it does not purport to be the exclusive way of providing "retirement, pension, or benefit systems" to such employees. See A.C.A. § 21-5-503 ("The deferred compensation program established by this subchapter shall exist and serve in addition to retirement, pension, or benefit systems established by the state, county, city, town, or other political subdivision, and no deferral of income under the deferred compensation program shall effect a reduction of any retirement, pension, or other benefit provided by law.")
As evidenced by the discussion above, state law does not expressly address the question you pose. I have found no express provision of current state law authorizing or prohibiting the action you describe. The language of Act 773 of 1999 does not expressly prohibit the provision of tax-sheltered annuities to superintendents not participating in the T-DROP program and I have found no other specific provision of law or pervasive evidence of legislative intent to prohibit such benefits. I must note nonetheless that recent enactments of the General Assembly evidence an evolving intention to restrict special benefits for "select employees." See e.g., Acts 773 of 1999 (prohibiting contributions to tax qualified retirements plans on behalf of persons participating in T-DROP and noting the Act's purpose to proscribe "unnecessary expenditures to benefit select employees"); Act 1738 of 2003 (temporarily limiting the duration and amount of certain public school employee contracts, including superintendents, without Board of Education approval, see note 3,supra); and Act 24 of 2005 (requiring school districts to provide the same health insurance benefits and pay the same employer contribution rate for each eligible employee). In addition, the issue of school superintendent compensation has been the subject of recent legislative inquiry. See, e.g.,
Division of Legislative Audit, Special Report, Arkansas Public School Districts Superintendent's Salaries (January 13, 2006), available at www.legaudit.state.ar.us. Caution is in all likelihood warranted on the issue.
Question 2 — If your answer to the above stated question is noby reason of the tax sheltered status of the annuity, would youropinion be the same if the annuity were not tax-sheltered?
In my opinion it is unnecessary to answer this question in light of the discussion above.
Question 3 — If the school district chooses to employ asuperintendent who has already retired, would they be permittedto provide such a tax-sheltered annuity as part of thatsuperintendent's compensation package?
I cannot answer this question without detailed reference to the particular retirement status of the superintendent in question. As an initial matter, several preliminary issues may arise as to the reemployment of a retired individual. The laws regarding the reemployment of individuals previously retired with the Teacher Retirement System are extremely complicated and fact specific. For example, is the superintendent a DROP retirant? When did he or she retire? Will the newly employed superintendent seek to rescind his or her retirement decision under A.C.A. § 24-7-717
(Supp. 2005) or other applicable Board policies? How old is the retirant? What will be the level of compensation under the superintendent's contract? There are simply too many variables for me to address your question regarding the provision of a tax-sheltered annuity with regard to a previously retired individual. I cannot address this question meaningfully in an official Attorney General opinion without all the specific facts.
Question 4 — If your answer to the above stated question is noby reason of the tax sheltered status of the annuity, would youropinion be the same if the annuity were not tax-sheltered?
In my opinion it is unnecessary to answer this question in light of the response above.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Again, at the time of passage of Act 773 in 1999, no employer contributions were required. In 2003, legislation was passed to phase back in employer contributions on behalf of individuals participating in T-DROP. See Act 992 of 2003, amending § 24-7-1303 (Supp. 2005).
[2] I will assume for purposes of this opinion that a "tax-sheltered annuity" is a "tax-qualified retirement plan."See e.g., See e.g., In re MacIntyre, 74 F.3d 186 (9th Cir. 1996); and BTC Federal Credit Union v. King, 196 Misc.2d 250,764 N.Y.S.2d 519 (2003); and In re Gurry, 253 B.R. 406 (2000).
[3] Subsections (c) and (d) were added by virtue of Act 1738 of 2003 and appear to be temporary provisions now expired:
 "(c) Beginning on July 16, 2003, through July 1, 2004, notwithstanding any other provision of law except for currently binding contractual obligations or enforceable court-ordered mandates, no public school board or the governing board of an educational cooperative or charter school may employ or extend the employment contract of any superintendent, assistant superintendent, school principal, department head, coach, teacher, or other certified or noncertified personnel for a period of time more than one (1) fiscal year without the prior written approval of the State Board of Education or the Director of the Department of Education as allowed in emergency situations.
 (d) No employment contract or extension to an employment contract entered on or after July 16, 2003, through July 1, 2004, may have a combined total increase in salaries, income, and benefits of greater than seven and one-half percent (7.5%) of the immediate previous existing contract for the same or substantially similar personnel position without the prior written approval of the state board, except for salary or benefit increases legislatively approved and mandated by the General Assembly, specifically including, but not limited to, pay increases under The Educator Compensation Act of 2001, §§ 6-17-2101
et seq., 6-5-307(a), and 6-20-412 or any salary increase based on an increment for experience or training published in a currently approved school district salary schedule."
[4] It is my understanding that §§ 24-7-1201 to -1206 of the Arkansas Code, which authorize the Board of Trustees of the Arkansas Teacher Retirement System to "in its discretion, adopt one (1) or more tax-deferred saving plans authorized by the federal government if it finds that doing so will offer substantial tax benefits to school employees covered under the provisions of this subchapter" (see A.C.A. § 24-7-1202(b)(2)), has never been implemented by the Board.
[5] In addition, the provision of such a tax-sheltered annuity to one employee of a school district may raise problems under federal tax law, depending upon the structure of the arrangement. To the extent the particular tax-sheltered annuity is accomplished by virtue of a "salary reduction agreement," federal tax law may require participation of more than just one employee of the school district. See 26 U.S.C.A. § 403(b)(12)(A)(ii) (Supp. 2005). If the "tax-sheltered annuity" is not structured through a salary reduction agreement, the coverage requirements addressed above may be inapplicable, but federal compensation limits may in some instances still prohibit the arrangement.See 26 U.S.C.A. § 403(b)(12)(A) and (C) and26 U.S.C.A. § 401(a)(17). In addition, employees participating in § 457 deferred compensation plans may be excluded from participation in § 403(b) plans. 26 U.S.C.A. § 403(b)(12)(A). Obviously, federal tax law is implicated in addressing the questions you have posed. To the extent your questions require an analysis of federal tax law, this office is not the appropriate venue to address your questions. Particular school districts facing this issue would have to consult with their appointed counsels, specially retained private taxation counsel, or consult with Internal Revenue officials to obtain any needed advice in this regard.